UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

REYNAULT CHEVALIER,

                      Plaintiff,

      -vs-                                        11-CV-788(JTC)

J. SCHMIDT,

                      Defendant.

---

APPEARANCES:         REYNAULT CHEVALIER, Plaintiff *Pro Se.*

                             HON. ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL OF THE STATE OF NEW YORK, (BENJAMIN K. AHLSTROM, ASSISTANT ATTORNEY GENERAL, OF COUNSEL), Buffalo, New York, Attorneys for Defendant.

## INTRODUCTION

Plaintiff brought this action pursuant to 42 U.S.C. § 1983. He seeks compensatory damages for the alleged denial of procedural due process and First Amendment rights. Currently pending before the court is the defendant's motion to dismiss (Item 9).

## BACKGROUND and FACTS

Plaintiff commenced this action on July 25, 2011 with the filing of a *pro se* complaint in the District Court for the Southern District of New York (Item 2).[1]

---

[1] In addition to defendant Schmidt, plaintiff named the State of New York, Investigator R. Gessner, and Lieutenant Milo as defendants. In an order filed February 21, 2012, plaintiff's claims against the latter three defendants were dismissed (Item 6). Additionally, the court dismissed plaintiff's claims pursuant to the Eighth Amendment alleging cruel and unusual punishment.

Specifically, plaintiff alleged that in 2009, while incarcerated at Groveland Correctional Facility, he wrote a letter to the New York State Supreme Court Justice who had sentenced him. In that letter, which is quoted in the complaint, plaintiff stated, "You are to blame for the violation of my civil and constitutional rights. . . . I will see to it one way or another you are penalized for your corrupt actions." (Item 2, p. 10). During the course of an investigation by the New York State Inspector General's Office, plaintiff was interviewed at Groveland. He admitted writing the letter and was served with an Inmate Misbehavior Report for harassment and threats in writing (Item 2, p. 20). Following a Tier III disciplinary hearing, on July 9, 2009, plaintiff was found guilty and was sanctioned to a period of 12 months in the Special Housing Unit ("SHU") and a loss of privileges. *Id.*, p. 21. Plaintiff alleges that, initially, defendant Schmidt was going to issue a period of "keeplock," a less restrictive form of confinement than SHU, but that he reconsidered and imposed confinement in the SHU (Item 2, p. 14). Plaintiff appealed that determination, and the sentence was reduced to six months. *Id.*, p. 22. Plaintiff was released from the SHU on November 28, 2009 after serving 136 days. *Id.*, pp. 15, 23.

On September 14, 2011, this case was transferred to the Western District (Item 4). On February 21, 2012, plaintiff was granted permission to proceed *in forma pauperis* (Item 6). In lieu of an answer, on August 1, 2012, defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim (Item 9). On August 9, 2012, the parties consented to the referral of this matter to United States Magistrate Judge H. Kenneth Schroeder, Jr. pursuant to 28 U.S.C. § 636 (c) for all further proceedings including the entry of judgment (Item 11).

Plaintiff sent a letter response to the motion to dismiss dated October 30, 2012 (Item 15). On November 29, 2012, the case was transferred to the docket of the undersigned (Item 14). The court has determined that oral argument is unnecessary. For the reasons that follow, the defendant's motion to dismiss is granted.

## DISCUSSION

**1. Standard of Review**

The standard of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim is well-settled. "To survive a motion to dismiss [under Rule 12(b)(6) ], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff. *Holmes v. Grubman,* 568 F.3d 329, 335 (2d Cir. 2009).[2]

As the plaintiff is proceeding *pro se*, his submissions should be held "to less stringent standards than formal pleadings drafted by lawyers . . . ." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quotations and citation omitted); *see also Harris v. Mills*, 572 F.3d

---

[2] Consideration of a motion to dismiss "is limited to the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Various documents were attached to plaintiff's complaint and have been considered on the present motion.

66, 72 (2d Cir. 2009) (the court is "obligated to construe a *pro se* complaint liberally"). Nevertheless, *pro se* plaintiffs are not excused from the normal rules of pleading and "dismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief." *Geldzahler v. N.Y. Med. Coll.*, 663 F.Supp.2d 379, 387 (S.D.N.Y. 2009) (quoting 2 Moore's Federal Practice § 12.34[4][a], at 12–72.7 (2005)). Additionally, while a *pro se* complaint should generally not be dismissed without granting leave to amend at least once, *see Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010), leave to amend need not be granted where a liberal reading of the complaint gives no indication that a valid claim might be otherwise stated and amendment would be futile. *Morpurgo v. Inc. Vill. of Sag Harbor,* 697 F.Supp.2d 309, 342 (E.D.N.Y. 2010), *aff'd,* 417 Fed. Appx. 96 (2d Cir. 2011) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that a "futile request to replead," even by a *pro se* litigant, "should be denied").

## 2. First Amendment Retaliation

Plaintiff alleges that he was punished for exercising his First Amendment right to redress grievances when he was issued a misbehavior report for writing to the judge who sentenced him to prison. It is well-established that a prisoner retains certain First Amendment rights notwithstanding his incarceration. *See, e.g., Pell v. Procunier*, 417 U.S. 817, 822 (1974). Nevertheless, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979) (internal quotes and citations omitted). In the First Amendment context, a

4

prisoner retains only those rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell,* 417 U.S. at 822. It is generally recognized that security, order, and rehabilitation are legitimate penological objectives. *See Procunier v. Martinez*, 416 U.S. 396, 413-14 (1974).

"To prove a First Amendment retaliation claim under Section 1983, a prisoner must show . . . (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (citation omitted). Since it is "near[ly] inevitabl[e]" that "prisoners will take exception" with the decisions of prison officials, the Second Circuit has cautioned that prisoners' retaliation claims must be "examin[ed] . . . with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

In this case, plaintiff's letter to the sentencing judge is not "protected speech" for purposes of the First Amendment. Plaintiff does not deny that he wrote the letter, but merely argues that he did not intend to threaten or harass the judge. Clearly, the statement, "You are to blame for the violation of my civil and constitutional rights. . . . I will see to it one way or another you are penalized for your corrupt actions" (Item 1, p. 10), can reasonably be interpreted as a threat to the judge. Legitimate penological interests in rehabilitation and preserving institutional authority permit prison officials to discipline inmates who engage in harassing and insulting behavior even when inmates are taking part in otherwise protected activities. *See Allah-Kasiem v. Sidorowicz*, 2012 WL 2912930, *9 (S.D.N.Y. July 17, 2012). Vulgar, insulting, and threatening statements

5

have been found not to be protected speech for purposes of the First Amendment.  *See Morgan v. Quarterman*, 570 F.3d 663, 667 (5th Cir. 2009) (prison could discipline inmate who sent opposing counsel note written on toilet paper that was "unsolicited, harassing, and resembled a threat"); *Allah-Kasiem,* 2012 WL 2912930, *9 (prison discipline of inmate proper where inmate made oral statement to female corrections officer using offensive and sexually graphic language and telling her to "watch her back"); *Jackson v. Onondaga County*, 549 F.Supp.2d 204, 215 (N.D.N.Y. 2008) (profane or threatening language in addressing corrections staff not protected speech). As plaintiff has failed to allege that he engaged in any speech or conduct protected by the First Amendment, this claim must be dismissed.

### 3. Procedural Due Process

Additionally, plaintiff alleges that his removal from general population to the SHU was unjust and unconstitutional.  As of result of his confinement in SHU, plaintiff lost his inmate job in the Groveland facility kitchen.  He has framed his claim as one for the violation of procedural due process.  When asserting a due process claim under section 1983 "a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendants deprived him of that interest as a result of insufficient process."  *Ortiz v. McBride,* 380 F.3d 649, 654 (2d Cir. 2004) (citation omitted).

"A prisoner's liberty interest is implicated when an institution's disciplinary decision results in an 'atypical and significant hardship ... in relation to the ordinary incidents of prison life.' " *Luna v. Pico*, 356 F.3d 481, 487 n. 3 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  SHU or "keeplock" confinement in New York for a period of less than 101 days is generally not found to constitute an atypical

hardship, while SHU confinement of more than 305 days has been held to be "atypical." *Ortiz,* 380 F.3d at 654; *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir. 2000). In this case, plaintiff was held in the SHU for approximately four months, a period exceeding 101 days. Assuming that plaintiff has a liberty interest in avoiding confinement to SHU in excess of 101 days, he is entitled to procedural due process protections. *Shapard v. Attea,* 2011 WL 6012966, *6 (W.D.N.Y. December 1, 2011).

To comport with procedural due process, an inmate charged with a violation in a disciplinary hearing must be given: "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton,* 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974). Additionally, the Supreme Court has held "that the requirements of due process are satisfied if some evidence supports the decision by the [hearing officer]," and the Second Circuit has held that the test is whether there was "'reliable evidence' of the inmate's guilt." *Luna v. Pico*, 356 F.3d at 487–88; *see also Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

In this case, plaintiff has not alleged a specific violation of due process, and the record confirms that the minimum due process standards as set forth in *Wolff* were met. Plaintiff was given written notice of the charges on June 30, 2009 and was advised that he had the right to call witnesses (Item 2, p. 20). The hearing commenced on July 8, 2009 and concluded on July 9, 2009 (Item 2, p. 21). Plaintiff alleged that defendant Schmidt, the hearing officer, allowed him to expound on the statements he made in his

letter to the sentencing judge (Item 2, p. 14).  Plaintiff was given a written disposition of the charges (Item 2, p. 21).  He then appealed the decision, and his time in SHU was reduced to six months (Item 2, p. 22).  Plaintiff does not allege that defendant Schmidt was biased or that he was found guilty on insufficient evidence.  Plaintiff merely objects to the imposition of SHU confinement, which has previously been found not to constitute a violation of the Eighth Amendment proscription against cruel and unusual punishment (Item 6, pp. 10-11).  Accordingly, plaintiff has failed to allege a violation of his right to procedural due process, and this claim must be dismissed.

## CONCLUSION

Based on the foregoing, the defendant's motion to dismiss (Item 9) is granted and the complaint is dismissed.  As a liberal reading of the complaint gives no indication that a valid claim might be otherwise stated and amendment would be futile, the court declines to grant plaintiff leave to amend the complaint.  Additionally, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and *in forma pauperis* status is denied for purposes of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444-45 (1962).

So Ordered.

\_\_\_\_\s\ John T. Curtin\_\_\_\_\_
HON. JOHN T. CURTIN.
United States District Judge

Dated: 12/19/2012
p:\pending\2011\11-788.nov2912